**AKERMAN LLP**
JUSTIN D. BALSER (AZ SBN 027845)
Email: justin.balser@akerman.com
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303.260.7712
Facsimile:  303.260.7714

Attorneys for Movant
ABC CORP.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA – PHOENIX DIVISION

| | |
|---|---|
| ABC CORP., <br><br> Movant, <br><br> v. <br><br> XMISSION, L.C., a Utah limited liability company, <br><br> Respondents. | Case No: <br><br> **MOTION TO QUASH THIRD-PARTY SUBPOENA SERVED ON GODADDY.COM** |

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that ABC Corp. moves this court to quash the third party, foreign subpoena issued by XMission, L.C. in United States District Court, District of Utah case number 20-cv-00878, and served on GoDaddy.com in Arizona for the production of documents and records related to various internet domains owned by movant. This motion is made pursuant to Fed. R. Civ. P. 45.

The motion is based on this notice, the attached memorandum of points and authorities, all filed documents and exhibits, and any argument presented at the hearing should the court set this motion for oral argument.

**PLEASE ALSO TAKE NOTICE** that movant asserts its request for the court to award it fees and costs.

///

///

Respectfully submitted, this the 19th day of February, 2021.

**AKERMAN LLP**

By: */s/ Justin D. Balser*
Justin D. Balser (AZ SBN 027845)
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: 303.260.7712
Facsimile: 303.260.7714
E-mail: justin.balser@akerman.com

*Attorneys for Movant ABC CORP.*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Movant, ABC Corp., the unnamed owner of betterbrainperformance.com, freedomfromjointpain.com, healthyhairremedy.com, longevityactivator.com, longevityactivator.net, puregreensforlife.com, silentmaleplague.com, trimfataway.com, visionforalifetime.com, and yourhealthybloodsugar.com (collectively, the "Targeted Domains"), moves this Court to quash the subpoena issued by XMission, L.C. to GoDaddy.com, LLC in District of Utah case number 2:20-cv-00878[1]. ABC Corp. is an anonymous designation used to protect the movant's identity.

XMission, a purported Utah provider of internet services, filed a complaint in the District of Utah alleging that ZippyLoan.com and its agents sent unwanted emails to XMission's customers in violation of the CAN-SPAM Act, 15 U.S.C. § 7704. Ex. A. The complaint does not specifically name any of the alleged agents of ZippyLoan, listing Does 1-10 instead. *Id.* After moving to expedite discovery, Ex. B, XMission served a subpoena through the District of Utah on Scottsdale-based GoDaddy seeking the registration information for the Targeted Domains and all domains that ABC has registered over the last three years. Ex. C.

The complaint addresses specific emails that ZippyLoan sent to XMission's customers. XMission does not draw any nexus or connection, however, between the Targeted Domains and ZippyLoan or Does 1-10. Even so, through the subpoena, XMission seeks private, protected corporate information not only on the Targeted Domains, but also for *every* other internet domain registered to ABC in the last three years with no discernable connection between the lawsuit and the information the subpoena demands. The subpoena also demands that GoDaddy produce the information at the Lehi, Utah offices of XMission's attorney, some 648 miles away from GoDaddy's headquarters.

---

[1] ABC Corp. requests that this Court take judicial notice of the Complaint, Motion for Expedited Discovery, and the Subpoena from the District of Utah case. *Hutchinson v. Hahn*, 402 Fed. Appx. 391, 394-95 (10th Cir. 2010); Fed. R. Evid. 201. Those documents are included with this motion as exhibits A-C.

AKERMAN LLP
1900 SIXTEENTH STREET, SUITE 1700
DENVER, COLORADO 80202
TEL.: (303) 260-7712 – FAX: (303) 260-7714

This subpoena suffers from facial defects for lack of jurisdiction and overbroad, irrelevant requests. XMission did not even feign an attempt to connect the specific allegations in the complaint with the information sought by its far-reaching subpoena. The subpoena's deficiencies are fatal and beyond repair. This Court should quash the subpoena.

## II.  JURISDICTION

GoDaddy, the subpoenaed entity, is in this District, mandating that ABC bring this motion to quash in this Court as the place of compliance. Fed. R. Civ. P. 45(c)(2)(A); Ex. C. While XMission's attorney issued the subpoena through the District of Utah, the proper place for compliance is in the place where the target resides or does business. *In re Google, LLC*, Case No. 20-mc-80141-VKD, 2020 WL 7202818 at *4 (N.D. Cal. Dec. 7, 2020). Thus, jurisdiction properly lies with this Court.

If this Court disagrees on its power to quash this subpoena, ABC asks that the Court give ABC leave to move to transfer the action rather than dismiss it outright. Such an opportunity would serve judicial economy and save both time and money.

## III.  ARGUMENT

The Court should quash the subpoena for four reasons: (1) it violates the geographic limitations in Rule 45(c)(2)(A); (2) it consists facially overbroad demands; (3) it demands irrelevant information with no connection or salience to the allegations in the complaint; and (4) public policy requires the Court to prevent similar future attempts at getting confidential information without a need for it. Each of these objections shatters the subpoena's foundation.

**A.   The place of compliance is well beyond the 100-mile limit.**

Rule 45(c) requires that any subpoena include a place of compliance within 100 miles of where the target of that subpoena lives or works. Fed. R. Civ. P. 45(c)(2)(A). Subsection (d)(3)(A)(ii) requires a court to quash a subpoena that violates that geographical limit. *Id*. at (d)(3)(A)(ii); *In re Google*, 2020 WL 7202818 at *4; *Spider Labs Ltd. v. Doe*, Case No. MC-20-00039-PHX-SPL, 2020 WL 6262397 (D. Ariz. Oct. 23, 2020). XMission served the subpoena on GoDaddy's compliance department in Scottsdale, Arizona and designated its

attorney's office in Lehi, Utah as the place of compliance. According to Google Maps, the GoDaddy compliance department is 648 miles away from the Lehi offices of XMission's attorney. The subpoena requires production of documents at those Lehi offices. Ex. C. The subpoena cannot survive this geographical defect and, for this reason alone, this Court should quash it.

**B.    XMission's demand for all websites registered since January 2018 is facially overbroad and irrelevant to the claims against ZippyLoan.**

Part of XMission's subpoena demands not just registration information for the Targeted Domains but also registration information for all other domains registered by ABC between January 1, 2018 and the present. Ex. C. Neither the complaint nor XMission's motion for expedited discovery contain even a bare justification for such an expansive demand. Instead, XMission tries throwing sweeping subpoena demands against the wall to see which ones might stick. But none can stick.

The issuing party bears the burden of showing that the requests are within the proper scope of discovery where the request is facially overbroad. *Mackey v. IBP, Inc.*, 167 F.R.D. 186, 197 (D. Kan. 1996); *Casun Invest., A.G. v. Ponder*, Case No. 2:16-cv-2925-JCM-GWF, 2019 WL 2358390 at *5 (D. Nev. June 4, 2019). Demanding identification of *all* domains registered by ABC over the last three years qualifies as facially overly broad. XMission justified the subpoena in its request to expedite discovery by arguing that it would be a vehicle "that could be used to identify Defendants . . . so that they may be properly served with process and answer the foregoing claims." Ex. B. How a request seeking all domain registrations for an unknown account holder can be considered tailored to find defendants who sent XMission's customers ZippyLoan advertisement emails is a mystery.

A cursory review of the domain names listed in the subpoena reveals no apparent rationale for how XMission cobbled together these particular websites. ZippyLoan's inclusion makes perfect sense; XMission has a right to discover the information needed to serve a named defendant with the complaint. But things quickly become unclear from there. The complaint alleges that the subject emails were designed to generate marketing leads for

financial lenders. Ex. A. Thus, XMission's inclusion of domains such as freedomfromjointpain.com or trimfataway.com makes far less sense. The Targeted Domains are unrelated to the actual allegations in the complaint; information about all of ABC's other domains for the last three years is even less so.

The Court has only the record that XMission created to determine the appropriate scope of the subpoena. The complaint does not make any allegations that implicate the Targeted Domains in the alleged CAN-SPAM Act violations, much less make any connection to ABC itself. XMission's only hope is that it can twist and stretch the allegations into a shape that convinces this Court that the demands are not facially overbroad. This Court should decline XMission's invitation to rewrite the complaint.

Taken at face value, the subpoena appears to be little more than a backdoor way for XMission to obtain confidential registration information for as many domains as possible for its use in future cases.[2] This is not a proper use of a third-party subpoena. XMission must justify the breadth of its request for all of domain names ABC has registered in the last three years. Since it cannot, this Court should quash the subpoena.

**C.     XMission makes no connection between ABC or the Targeted Domains and the allegations in the complaint.**

The requesting party must show that the information it seeks is relevant to the action's claims and defenses. *Moon v. SCP Pool Co.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005) (internal citations omitted); *In re Google*, 2020 WL 7202818 at *4. Relevance in discovery may be broad, but it is not boundless. XMission seeks confidential corporate information for ABC and all of its registered domains from the last three years, but that information does not pass the basic relevance threshold required for its disclosure.

Since courts look to the claims made in the complaint to determine relevance, it is

---

[2] In less than six years, XMission has filed at least 19 CAN-SPAM Act complaints in the District of Utah alone. It has also sent an unknown number of demand letters alleging CAN-SPAM violations. According to a June 2016 deposition of XMission's corporate representative, its entire profit margin for 2014 and 2015 came from CAN-SPAM settlements. Ex. D. Exhibit D was originally a motion exhibit in District of Utah case number 2:15-cv-00277 at Doc. 118-2.

6
**NOTICE OF MOTION AND MOTION TO QUASH THIRD PARTY SUBPOENA; MEMORANDUM OF POINTS AND AUTHORITIES**

useful to begin there in this case. The complaint alleges that an unknown number of XMission's customers received an unknown number of commercial emails sent by or on behalf of ZippyLoan over an unknown time period in violation of the CAN-SPAM Act. Ex. A. As part of the complaint, XMission names not only ZippyLoan.com but also Does 1-10 as agents of ZippyLoan. *Id*. It does not allege more specific information about Does 1-10 other than they are agents sending the allegedly offending emails on ZippyLoan's behalf. *Id.*

Courts view the relevance of the subpoena's demands through the prism of identifying those agents acting on ZippyLoan's behalf in sending the emails. The lack of detail in the complaint is noteworthy. XMission does not specify how many customers received these emails (is it 1 or 1,000?), how many emails allegedly violated the CAN-SPAM Act (again, is it 1 or 1,000?), or when the emails were received (were they received over 1 day or 1 year?). More than that, nothing about the Targeted Domains reveals an obvious or even subtle connection to ZippyLoan's lender lead generation business. In fact, it is apparent from a simple visit to the Targeted Domains that they are in business for themselves and do not serve as agents for a company doing a different type of business.

Contrast the relevance of the subpoena applied to ZippyLoan with the relevance of the subpoena against the Targeted Domains. ZippyLoan is a named defendant; information on its ownership and that owner's various domains is relevant to serving process on ZippyLoan and determining any potential agency relationships. This is less apparent for each of the Targeted Domains. The complaint identifies lead generation activities for financial lenders as the primary purpose behind the emails at issue. What relevance does healthyhairremoval.com have to that end?

XMission's subpoena amounts to a shot in the dark. Neither the subpoena nor the complaint establishes at least some plausible connection between the Targeted Domains or ABC and the CAN-SPAM Act claims against ZippyLoan. Had XMission confined its subpoena to seeking information about other websites in the lending business, the decision of whether to quash would be a closer call. But since it chose to include a bevy of health and wellness websites with no connection to the lending business, the decision is clear. The

subpoena fails any relevance test, and the Court should quash it.

**D,      Quashing or seriously restricting the subpoena furthers the goals of the discovery process.**

XMission's subpoena is divorced from the allegations in its complaint. Whether XMission's motive in serving the subpoena for information on the Targeted Domains and on ABC's other websites is nefarious or innocent, permitting enforcement of the subpoena would open the door to similarly undirected, "fishing expedition" subpoenas. XMission's own history of filing CAN-SPAM cases and sending demand letters for alleged CAN-SPAM violations lends credibility to such a risk. *See* Ex. D. If XMission can gain confidential corporate information without a need and with no attempt at justification, then nothing stops it or another company from using a current action to procure information for a future one.

Whatever its real motivation, XMission's tactics here leave open the distinct possibility that it wants to pursue an action against the owner of the Targeted Domains but lacks sufficient information to do so. What stops XMission or some other entrepreneurial plaintiff from serving a subpoena on a similarly vague and unfounded basis like this one and just collecting confidential information for its own use as a future litigant or even a competitor?

Courts are the only ones positioned to curtail these potential abuses. Public policy reasons can serve as a basis to quash or modify a subpoena. *See, e.g.*, *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003); *Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225 (9th Cir. 1975); *Hickman v. Taylor,* 329 U.S. 495 (1947). At stake here is the public policy of keeping confidential information secret absent a demonstrable need. XMission has no need of ABC's confidential business information. It can obtain relevant information from ZippyLoan. In fact, ZippyLoan is best positioned to answer the question of who sent the allegedly offending emails, whether that be an agent or ZippyLoan itself.

XMission has no need for ABC's confidential information. As a matter of public policy, requiring compliance with the subpoena could create a backdoor for unscrupulous

parties to use sweeping subpoena demands as no more than collection of private corporate data. Allowing these types of subpoenas may also give license to those same parties to weaponize them and make discovery a game rather than a useful, cooperative part of litigation. This Court should quash the subpoena and uphold the image of integrity the litigation system enjoys.

## IV.  ATTORNEY'S FEES AND COSTS

An award of attorney's fees in a motion to quash proceeding is appropriate where the subpoenaing party failed to take reasonable steps to avoid unduly burdening the non-party target. Fed. R. Civ. P. 45(d)(1); *Huntair, Inc. v. Climatecraft, Inc.*, 254 F.R.D. 677, 679 (N.D. Okla. 2008) (internal citation omitted). XMission took no steps at all to avoid unduly burdening ABC. The subpoena is facially defective in several ways and makes no connection between the claims against ZippyLoan and the Targeted Domains or ABC's other registered domains for the last three years.

As a result of XMission's ham-handed subpoena, ABC has incurred attorney's fees and costs in moving to quash in this District, including paying filing fees and paying attorney's fees. The Court should award ABC the right to recover its reasonable attorney's fees and costs as a result of XMission's failure to take any steps to avoid unduly burdening ABC.

## V.  CONCLUSION

The subpoena against ABC has no foundation. XMission does not tailor its complaint or the subpoena to fit any circumstances that would make the information it seeks from ABC relevant. The Targeted Domains are not even in a related commercial field to ZippyLoan. With no path to prove the subpoena is a valid exercise of the discovery process, this Court should quash the subpoena.

**WHEREFORE**, the movant, ABC Corp., requests this Honorable Court:

1. Take jurisdiction of this dispute;
2. Grant the motion to quash the subpoena;
3. Award ABC Corp. its reasonable attorney's fees and costs;

4. And award any further relief that this Court deems appropriate.

Respectfully submitted, this the 19th day of February, 2021.

**AKERMAN LLP**

By: */s/ Justin D. Balser*
Justin D. Balser (AZ SBN 027845)
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:	(303) 260-7712
Facsimile:	(303) 260-7714
E-mail: justin.balser@akerman.com

*Attorneys for Movant ABC Corp.*

**NOTICE OF MOTION AND MOTION TO QUASH THIRD PARTY SUBPOENA; MEMORANDUM OF POINTS AND AUTHORITIES**

# CERTIFICATE OF SERVICE

I hereby certify that on February 19, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing.

I hereby certify that on February 19, 2021, I served the attached document by U.S. Mail on the following:

Rick K. Carter
Matthew A. Klopp
Shane Q. Parker
Wong and Carter P.C.
3003 North Central Avenue
Suite 1000
Phoenix, Arizona 85012
*Attorneys for plaintiffs*

/s/ *Joanna A. Seiner*
Joanna A. Seiner