**Jordan K. Cameron (Utah Bar No. 12051)**
Jordan.cameron@dentons.com
**DENTONS DURHAM JONES
PINEGAR, P.C.**
3301 N. Thanksgiving Way, Suite 400
Lehi, Utah 84043
Telephone: (801) 375-6600
Fax: (801) 375-3865
*Attorney for XMission*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA – PHOENIX DIVISION

| | |
|---|---|
| ABC Corp., | **Case No.:_2:21-mc-00007-DWL_____** |
| Movant | |
| v. | **MEMORANDUM IN OPPOSITION TO MOTION TO QUASH AND DECLARATION IN SUPPORT** |
| XMission, L.C., | |
| Respondent. | |

COMES NOW, Plaintiff XMission, L.C. ("XMission"), through counsel, and hereby submits this *Opposition to ABC's Motion to Quash*.

### INTRODUCTION

ABC Corporation's ("ABC") *Motion to Quash* ("Motion") seeks to quash a subpoena to third party, GoDaddy.com (the "Subpoena"). (*See* Motion Exh. C). The Motion has no legal basis and the Court should deny it.

First, the Motion is improperly before this Court. A majority of jurisdictions have held that motions to quash or modify a subpoena must be brought before the district of compliance stated in the subpoena—in this case, Utah. On this basis alone, this Court should deny the Motion and dismiss this action.

Second, under this Court's precedent, ABC has no standing to object to the Subpoena based on the Rule 45 geographical limitations. Rather, this objection is reserved for the party subject to the Subpoena—GoDaddy.com.

Third, the requests in the Subpoena are narrowly tailored to discover information and data that will lead to the discovery of the identities of the owners/controllers of zippyloan.com, and the parties acting in concert with zippyloan.com, identified in the *Complaint* as "Does 1-10 [who] are individuals and companies who act as agents for Zippy in the processing and publishing of email advertisement . . . ." and further, the parties "acting in concert with each other, [who] sent additional spam emails that XMission has been unable to connect directly with them due to the misleading nature of the information in the emails." (Motion Exh. A, ¶¶ 3, 29). Accordingly, the Subpoena is neither irrelevant nor overly broad.

Fourth, while the information sought is relevant to XMission's claims, there are no overriding public policy concerns that would justify quashing or modifying the subpoena. Finally, whether or not ABC prevails on this Motion, it is not entitled to attorney's fees, as Rule 45 only allows fees for the party subject to the subpoena, not a third party. Based on the foregoing, this Court should deny ABC's Motion in its entirety.

<u>**OBJECTION TO PERSONAL JURISDICTION**</u>

XMission objects to the personal jurisdiction of this Court and makes a limited appearance only to respond to the Motion. XMission explicitly reserves the right to formally object to this Court's exercise of personal jurisdiction over it in this and any future proceedings as XMission does not do business in Arizona, does not have the requisite minimum contacts in Arizona, and subjecting it to litigation in the State offends due process.

<u>**FACTUAL BACKGROUND**</u>

XMission filed its *Complaint* against Zippyloan.com and Does 1-10 on December 14, 2020. (*See* Motion Exh. A). The *Complaint* alleges multiple violations of the CAN-SPAM Act that exist in thousands of emails received on XMission's servers in Utah. *Id*. To aid this Court in determining the relevancy of the Subpoena, XMission has attached the *Declaration of Peter L. Ashdown* ("Ashdown Decl."), XMission's founder, Chief Technical Officer and President, hereto as Exhibit 1. The Declaration describes

XMission's process for identifying unlawful spam, and for seeking to identify the owners, controllers and marketing affiliates responsible for the spam. (*See* Ashdown Decl. at ¶¶ 5-9). It further describes in detail the indicia of a relationship between the owners, controllers and/or marketing affiliates of Zippyloan.com and the owners, controllers and/or marketing affiliates of the domains at issue in the Motion (the "Subject Domains"). (*Id.* at ¶¶ 10-24).

In summary, in an effort to mitigate the adverse effects of its receipt of spam for its own benefit and for the benefit of its customers, XMission analyzes emails and assigns them a "spam score." (*See id.* at ¶¶ 5-8). From there, XMission attempts to identify the full scope of similar spam it has received and the parties responsible for the spam, by analyzing multiple factors, including similarities between the email style, sender domains, redirect domains, and transmission data. (*Id.* at ¶ 9). As described in the Declaration, the technical similarities between the Zipplyoans.com spam and the Subject Domain's spam indicates a highly probable connection between the owners, controllers and/or marketing affiliates of Zippyloan.com, and those of the Subject Domains. (*Id.* at ¶¶ 10–23). However, given the sophistication of their efforts to remain undetectable, XMission is still unaware of the identities of the owners, controllers and marketing affiliates of Zippyloan.com and the Subject Domains. (*Id.* at ¶ 24).

Through the Subpoena, XMission requests the identity of the domain owners listed on the Subpoena, as well as the other domains registered to them. As described in the Declaration, the domain owners have gone to great lengths, including by filing this Motion, to remain anonymous. (*See generally*, *id.*). A complete response to the first portion of the Subpoena should identify the owners and controllers of the domains in the Subpoena. However, that domain registration information alone is insufficient to identify the marketing affiliate. For this reason, the second portion of the Subpoena is also relevant and necessary, as having a complete list of the owner/controllers' domains will likely lead to XMission's identification of related, but yet unidentified emails. Unlike the emails already identified, the newly identified emails may contain data leading to the

identities of all responsible parties including marketing affiliates (e.g., by inclusion of a physical address, IP addresses, tracking links, etc. that were inadvertently included or for which the parties failed to preserve their cloaking techniques).

Based on the foregoing, XMission tailored its Subpoena request to find information relevant to its search for the identity of Zippyloan.com and Doe Defendants.

## **ARGUMENT**

### I.      THIS COURT DOES NOT HAVE JURISDICTION TO HEAR THIS MOTION

Rule 45(d)(3) requires "the district where compliance is required" to hear motions to quash or modify a subpoena. While it appears the District of Arizona has not addressed the issue, a majority of federal courts agree that the "district where compliance is required" is the place of compliance named in the subpoena. *See*, e.g., *Adams v. Symetra Life Ins. Co.*, No. 19-MC-401, 2020 WL 489523, *2 (D. Kan. Jan. 28, 2020) ("[M]ost courts have concluded that the district where compliance is required is determined by the location or place of compliance identified on the subpoena."); *Uniloc USA, Inc. v. Apple Inc.*, No. 19-CV-01692, 2020 WL 6262349, *1–2 (N.D. Cal. Oct. 23, 2020) (holding that "place where compliance is required" was district named on the face of the subpoena, "even if that place of compliance is not proper under Rule 45(c)"). In this case, the place of compliance named on the subpoena is Utah. (*See* Motion Exh. C).

ABC cites to the minority rule, but the majority rule is more sound. As the Court in *Adams* noted, the minority rule is problematic in several ways. For example, in cases where a subpoenaed person or entity does not appear, it may be impossible to determine which district is one where the person "resides, is employed, or regularly transacts business in person." *Adams* at *2. This case poses another problematic scenario, where the movant attempts to quash a third party subpoena to which the subpoenaed party has not objected. As discussed below, GoDaddy.com has waived any and all procedural objections to the Subpoena, including geographical limitations. As a result, there is now a Utah entity and a Colorado entity—neither of which have any apparent connection to

4

Arizona—litigating this dispute in Arizona. Such a result is nonsensical. Accordingly, this Court should side with the majority of jurisdictions and dismiss this action.

## II.   ABC HAS NO STANDING TO OBJECT ON THE BASIS OF GEOGRAPHICAL LIMITATION SINCE IT IS NOT SUBJECT TO THE SUBPOENA.

Generally, only the party subject to a Subpoena has standing to move to quash it. *Oyenik v. Corizon Health Inc.*, No. CV-13-01597, 2014 WL 12787872, * 1 (D. Ariz. Nov. 20, 2014). The only exception to this rule is "when the documents subpoenaed infringe upon a privilege or personal right of the objecting party." *Id*. Even in light of this exception, it is well settled that "only the third party on which the subpoena is served has standing to object to alleged defects in the method of service and form of the subpoena." *Jiae Lee v. Dong Yeoun Lee*, No. CV-19-9914, 2020 WL 7890868, *5 (C.D. Cal. Oct. 1, 2020); *see also R. Prasad Industries v. Flat Irons Environmental Solutions Corp.*, No. CV-12-08261, 2014 WL 2804276, *8 (D. Ariz. June 20, 2014) (holding that movant "does not have standing to assert the geographical limitation as grounds to quash the subpoena" since it was not subject to the subpoena).

In *R. Prasad Industries*, this Court was faced with the exact argument ABC now asserts. *See* 2014 WL 2804276. Specifically, the movant sought to quash a subpoena that compelled a third-party California entity to produce documents in Arizona, allegedly in violation of Rule 45's geographic limitation. *Id*. at *8. In response, the Court held that the movant's standing "extend[ed] only so far as to assert her own interests, not those of the subpoenaed nonparty." *Id*. Accordingly, the Court held that the movant did not have standing to assert this objection.

Further supporting this argument, the subject of the Subpoena itself, GoDaddy.com, has waived any objections based on geographical limitations. XMission served the Subpoena on GoDaddy.com on December 31, 2020. Any objection as to location was required to be served on XMission by January 14, 2021. *See* Fed. R. Civ. P. 45(d)(2)(B); *see also Sell v. Country Life Ins. Co.*, No. CV-15-00353, 2017 WL 5713885,

*4 (D. Ariz. Feb. 27, 2017) ("Generally, failure to serve timely objections to a subpoena waives all grounds for objection."). No objection was or ever has been served. Accordingly, any objections thereto have long been waived by the only party they affect, and ABC has no standing or basis to raise them now.

III.    **THE SUBPOENAED INFORMATION IS LIKELY TO LEAD TO THE DISCOVERY OF INFORMATION INCLUDING THE IDENTITIES OF RESPONSIBLE PARTIES, AND IS SUFFICIENTLY NARROW IN SCOPE AND RELEVANT**

ABC's argument regarding relevancy spans two sections and alleges, in sum, that neither the Subject Domains nor the unidentified domains registered to ABC since 2018 are relevant to XMission's claims.[1]

**A.  The Subpoena seeks relevant information**

A party may obtain discovery "regarding any nonprivileged matter that is relevant to any claim," which, in this case, includes the identities of the parties liable for such claims. *Continental Circuits LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1018 (D. Ariz. 2020). This Court recognizes that relevancy under the Rules of Evidence is a "relatively low bar," encompassing any information "having 'any tendency' to make a fact in dispute 'more or less probable." *Id*. Further, it recognizes that relevancy for purposes of discovery is even broader than this standard. *Id* ("[C]ourts generally recognize that relevancy for purposes of discovery is broader than relevancy for purposes at trial") (internal citation omitted). Accordingly, the rule affords parties wide latitude in obtaining discovery that relates to their claims.

ABC argues generally that XMission has not established a connection between the Subject Domains and Zippyloan.com or the allegations in the *Complaint*, and that the

---

[1] Section B of ABC's *Motion* argues that the unnamed domains are both overbroad and irrelevant to XMission's claims. However, it is important to note that over breadth and relevancy are separate arguments that carry different standards—i.e., a request can be relevant yet overbroad or vice versa. Accordingly, XMission addresses the relevancy and over breadth arguments separately.

6

1    requested information is therefore irrelevant. This is inaccurate. First, it is disingenuous

2    to argue that the *Complaint* fails to make a connection to ABC itself, when ABC and

3    Zippyloan (and their related marketing affiliates) have gone to great lengths to hide their

4    identities. It is for this reason only that XMission is forced to conduct this discovery.

5    Moreover, as described further in the Factual Background and the Ashdown Decl. (Exh.

6    1), XMission has described in specific detail the similarities between the emails

7    connected to Zippyloan.com and emails connected to the Subject Domains.

8         Specifically, "Between the final months of 2019 and the first quarter of 2020,

9    XMission began to receive a high number of emails containing high spam scores that

10   provided redirect information that included domains such as zippyloan.com." (Ashdown

11   Decl. at ¶10). "There is no clear corporate identifying information anywhere on

12   zippyloan.com." (*Id*. at ¶ 11). Also, "zippyloan.com has a privately registered WHOIS

13   record through the third party service Domains by Proxy, which means the registrant data

14   is not made available to the public." (*Id*.; *see also* Ashdown Decl. Exhibit A). "During

15   the same time period, XMission also received a high number of emails containing

16   similarly high spam scores that provided redirect information that included" the Subject

17   Domains. (Ashdown Decl. at ¶ 12). "As with zippyloan.com, there is no clear corporation

18   identifying information anywhere on" the Subject Domain's websites. (*Id*. at ¶13). "Also

19   as with zippyloan.com, the WHOIS information for the Subject Domains is privately

20   registered through the same third party service, Domains By Proxy." (*Id*. at ¶ 14; *see also*

21   Ashdown Decl., Exhibit B).

22        "In addition to the foregoing, various [additional] suspicious characteristics . . .

23   alerted XMission to a possible connection between the owners/controllers of

24   zippyloan.com and the Subject Domains, or at the very least, a connection between the

25   marketing affiliates and email publishers . . . responsible for transmitting the spam

26   emails." (*Id*. at ¶ 15).

27        Specifically:

28        •    "[O]ver 2,200 emails directing recipients to one or more of the Subject

Domains were sent from email addresses that contain the sender domains adidanos.club and adidanos.com. Similarly, over 3,700 emails directing recipients to zippyloans.com were sent from email addresses that contain the sender domains adidanos.club and adidanos.com." (*Id.* at ¶¶ 16-17)

- "As with zippyloan.com and the Subject Domains, Adidanos.com is privately registered through Domains by Proxy. Therefore, XMission also included this domain in the list of domains on the subject Subpoena that ABC Corp is trying to quash." (*Id.* at ¶ 18; *see also* Ashdown Decl. Exhibit C).

- "In early 2020, Adidanos.club was registered to Threatworks, which is a spam notification service who has not authorized any other party to use the domain for any purpose. Prior to this time, the domain was unregistered for use by any party. In other words, somebody used the domain without authorization to send emails for zippyloans.com and the Subject Domains. This connecting link is highly suspicious." (*Id.* ¶ 19; *see also* Ashdown Decl. Exhibit D)

- "[O]ver 2,100 emails directing recipients to zippyloan.com were sent to 894 distinct recipient email addresses. Of those email addresses, 88 are unverifiable, which mean they do not correspond to a legitimate email address. Similarly, over 3,400 emails directing recipients to one or more of the Subject Domains were sent to the exact same 894 distinct recipient email addresses, 88 of which are unverifiable." (*Id.* at ¶¶ 20-21). "This indicates that the parties transmitting the emails for zippyloan.com and the Subject Domains utilized the same email list to populate its field of recipients. Unless there is some connection between the parties, this would be highly unlikely if not impossible." (*Id.* at ¶ 22).

- Many of the emails have the appearance of newsletters. In other words, the emails identify a generic sender and the email content takes the form of an

8

1    article that promotes a variety of different products. This similarity may

2    have otherwise been overlooked if not for the other similarities already

3    identified. (*Id*. at ¶ 23).

4    Based on the foregoing, there is a high probability of a connection between the

5    owner, controllers and/or marketing affiliates responsible for Zippyloan.com and the

6    Subject Domains (i.e., the Doe Defendants). Such probability is certainly sufficient to

7    satisfy the low threshold required for discovery.

8    It is also worth noting that although "XMission suspected that the Subject

9    Domains were likely all controlled by the same party as the result of the data analysis

10   described herein, it was not certain of this fact until ABC Corp revealed it through its"

11   Motion. (*Id*. at ¶ 25). This admission alone validates XMission's technical analysis, and

12   supports the basis for the subject Subpoena. It further calls suspicion to ABC's

13   motivation for attempting to remain hidden.

14   Simply, the subpoenaed information is discoverable if it is relevant to any of

15   XMission's claims and/or the identities of those involved in the conduct the claims

16   allege. In light of this broad standard governing relevancy in discovery, XMission has

17   carried its burden in demonstrating how its narrow requests are relevant to assist in the

18   identification of the Doe Defendants. Accordingly, this Court should deny ABC's Motion

19   on these grounds.

20   **B.  The Subpoena is not overbroad**

21   This Court has held that a discovery request is "overly broad" on its face if it: "(1)

22   uses an omnibus term such as "relating to" or "concerning," and (2) applies to a general

23   category or group of documents or a broad range of information." *Gutierrez-Valencia v.*

24   *Corizon Utilization Management*, 2020 WL 3574562, *2 (D. Ariz. July 1, 2020)

25   (emphasis added). As an example, a request seeking any and all records concerning the

26   business of ABC from the beginning of time would clearly be facially overbroad. This is

27   not the type of request at issue in the Subpoena, and ABC has not demonstrated that

28   XMission's requests satisfy one of these elements, let alone both.

1    ABC's only argument as to over breadth is that the Subpoena demands

2    identification of "all domains registered by ABC over the last three years." *See* Motion at

3    5.2 However, as other courts have recognized, the use of the term "all" does not render a

4    discovery request overly broad on its face where the request targets "discrete categories

5    of documents." *digEcor, Inc. v. e.Digital Corp.*, No. 2:06-CV-437, 2008 WL 4335544, *3

6    (D. Utah Sept. 16, 2008).

7    Here, the Subpoena requests a discrete category of documents—registered domain

8    names. Moreover, the request is further narrowed by time (i.e., 3 years). Therefore,

9    although XMission's request demands information for "all other domains registered" to

10    ABC from January 1, 2018 to the present, it is specifically narrowed only to documents

11    sufficient to identify the domain names (and nothing more) during a specific period of

12    time, related to the allegations in the Complaint.

13    Additionally, as discussed above, identification of these domains, and the data that

14    could potentially be gleaned therefrom will be instrumental in determining the identities

15    of the owners/controllers and marketing affiliates (likely including ABC) who have acted

16    in concert with Zippyloans.com, and qualify as Doe Defendants in the lawsuit.

17    Accordingly, this Court should reject ABC's argument.

18    IV.    PUBLIC POLICY DOES NOT SUPPORT QUASHING THE SUBPOENA

19    In a last ditch effort, ABC argues that the Court should quash the subpoena based

20    on "the public policy of keeping confidential information secret absent demonstrable

21    need." Motion at 8. This argument fails. First, for all the reasons explained herein above,

22    there is a demonstrable need for the requested information. Second, because the

23    subpoenaed information is relevant to XMission's *Complaint*, there must be some

24    overriding public policy that prevents its disclosure for ABC to prevail. *See*, e.g.,

25    *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 979 (6th Cir.

26    2003) (preventing discovery of statements made in settlement talks based on

27    

28

longstanding public policy favoring settlement of lawsuits); *Premium Service Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975) (holding that public policy disfavors unnecessary disclosure of tax returns in order to encourage complete and accurate returns). No such public policy exists here.

ABC has failed to demonstrate how the information requested is confidential, let alone so uniquely confidential that it deserves special protection. In fact, the information is only unavailable through public databases because ABC has taken efforts to utilize proxy registration services for its domains in order to remain hidden from the public. Just as zippyloan.com has done.

ABC's argument is little more than a failed attempt to paint XMission in a bad light based on its past litigation. XMission has never denied being involved in multiple CAN-SPAM cases. However, rather than being evidence of "nefarious" activity as ABC suggests, XMission's ongoing litigation only demonstrates the extent of the harm it has incurred from CAN-SPAM violations as detailed in the *Complaint*. As the Federal District Court in Utah aptly pointed out in response to the same aspersion,

> Any prior litigation, settlement or damage award, however, has no bearing on the unfavorable impact of spam and does not prohibit, or otherwise limit, XMission's ability to pursue statutory damages against [others] for violations of CAN-SPAM. As a bona fide Internet access server, it is undisputed that XMission experienced, and continues to experience, operational and technical impairments, with related financial costs, associated with its receipt of commercial email and spam.

*XMission v. Trimble*, *Report and Recommendation*, Case No. 2:17cv00136, August 24, 2018.

Public policy does not support preventing parties like XMission from discovering information that will reveal the identities of those causing it harm. In fact, ABC's desperate attempt to prevent XMission from obtaining their identity and the identities of their registered domains suggests that their conduct is the real issue here—not

XMission's. The Court should not allow ABC to prevail on this meritless argument.

## V.    ABC IS NOT ENTITLED TO ATTORNEY'S FEES OR COSTS

Even if ABC were to prevail on its Motion, in part or in whole, it is not entitled to attorneys' fees or costs. The general rule in federal courts is that "absent statute or enforceable contract, litigants pay their own attorneys' fees." *Independent Living Center of Southern California, Inc. v. Kent*, 909 F.3d 272, 281 (9th Cir. 2018). Rule 45(d)(1) allows recovery of attorney's fees for failing to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." ABC is not subject to the Subpoena. Rather, GoDaddy.com is.

ABC misleadingly states that the rule requires a party to take reasonable steps to avoid unduly burdening "the non-party target." It is unclear, but ABC appears to suggest it may collect attorney's fees because the Subpoena requests "target" information regarding their domains. However, there is no legal support for this proposition. As mentioned, Rule 45 explicitly allows only the party "subject to the subpoena" to recover attorney's fees. Moreover, the only case ABC cites involves the third-party subject to the subpoena requesting its own fees. *Huntair, Inc. v. Climatecraft, Inc.*, 254 F.R.D. 677 (N.D. Okl. 2008). The facts in *Huntair* would be analogous to GoDaddy.com filing a *Motion to Quash* and requesting fees, which is clearly contemplated in the Rules.

In short, ABC has no legal basis for requesting its fees or costs in this action, whether or not it prevails. Therefore, this Court should deny the request in its entirety. Nevertheless, if the Court were to grant fees to any party, it should be XMission, as the Subpoena is relevant and wholly justified in light of the pending action.

### CONCLUSION

For the foregoing reasons, XMission respectfully requests that this Court dismiss this action for lack of personal jurisdiction or, alternatively, deny ABC's *Motion to Quash*.

DATED this 15th day of March, 2021.

DENTONS DURHAM JONES PINEGAR, P.C.

/s/ Jordan K. Cameron
Jordan K. Cameron
*Attorneys for Respondent*

1

**<u>Certificate of Service</u>**

2

   I certify that on the 15th day of March, 2021, I caused the foregoing to be filed

3

electronically via the CM/ECF system, with service via CM/ECF.

4

5

AKERMAN LLP
Justin D. Balser

6

1900 Sixteenth Street, Ste 1700
Denver, CO 80202

7

8

              s/ Jordan K. Cameron
              _____

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28